Mr. Bates, attorney for the crown.

Mr. Parsons and Mr. Montgomery for the accused.

---

## IN THE MATTER OF MICHAEL M. WEBSTER.

A justice of the Superior Court, at chambers, will not interfere, on a writ of *habeas corpus*, with a commitment for contempt made by a Police Justice, in a matter within his jurisdiction, and while he acts within the scope of his authority.

### DECISION

Of CHIEF JUSTICE LEE, of the Superior Court, at Chambers, March 3d, 1852.

In the case of Michael M. Webster.

The writ of *habeas corpus* in this case was issued on the following petition:

"To the Hon. WILLIAM L. LEE, Chief Justice of the Superior Court of Law and Equity, Hawaiian Islands.

"The petition of Michael Morton Webster, of Honolulu, Oahu, Hawaiian Islands, represents: That your petitioner was duly subpœnaed as a witness to be and appear at the Police Court, Honolulu, in a complaint of the Crown *vs.* Thain on a charge of smuggling. And that in obedience to said command, he did appear at said Court, and being duly sworn, did answer any and all questions put to him,—.

such as did you have a barrel in your possession last Thursday night? I did. Did you get it from Capt. Thain ? I did not. Did you get it afloat ? I did not. And then to the question, Where did you get the barrel of spirits, I declined answering, when your petitioner was committed to the Fort, in custody of Wm. C. Parke, Marshal of the Hawaiian Islands, by C. C. Harris, Esq., Police Magistrate, and is still held in custody by said Wm. C. Parke, and deprived of his liberty in contravention of his legal rights.

" Therefore your petitioner prays that he may be brought before your Honor on a writ of *habeas corpus*, and that the causes of his detention may be enquired into, and his liberty restored him."

The return of the writ shows that the prisoner was committed to the custody of the Marshal by the Police Magistrate of Honolulu, for a contempt of court, under the following mittimus :

" To the Marshal of the Hawaiian Kingdom.

" Whereas, Michael Morton Webster has this day been convicted in the Police Court of Honolulu, of the offense of contempt of court, and was then sentenced to be committed to prison, until he shall see fit to answer the question put to him.

"Now, therefore, you are hereby strictly enjoined to cause said sentence to be executed.

" Given under my hand this first day of March, 1852.

"(Signed)     C. C. HARRIS,
" Police Magistrate of Honolulu."

Upon this showing, counsel have moved that the prisoner be discharged.

The mittimus is somewhat informal, and sets forth none of the facts of the case, yet it is sufficiently full and plain in its meaning, and no objection has been made to it. Therefore, we will proceed at once to the two great questions raised in this case; namely, can a Judge of the Superior Court at chambers issue a writ of *habeas corpus* when a person is in custody upon the commitment of a police justice for contempt, and upon the return of the writ, go behind the decision of the Magistrate, revise his judgment, set it aside, and discharge the prisoner; and secondly, if he can, is the present case one in which the magistrate erred and the prisoner ought to be discharged.

The writ of *habeas corpus* has always been considered among Englishmen and their descendants in the United States and the world over, as the great safeguard of personal liberty—the *Magna Charta* of their dearest rights,—the noblest and most revered of all the bulwarks of civil freedom, without a parallel among the nations of antiquity, and the distinctive glory of the Anglo-Saxon race.

This security against oppression, be the source of that oppression what it may, public or private, we are happy to say, has been introduced into this kingdom; and hence the questions involved in this case are of the deepest interest and importance. They are such as not to be passed over lightly, or settled without consideration, and due regard to the decisions of the distinguished jurists of England and the United States, those two countries where the privileges of this writ have always been enjoyed in the most free and ample manner. First, then, can we review the proceedings of the Police Magistrate, annul his conviction and sentence, and discharge the prisoner? In the case of Laumia and Makaukau, who were convicted of adul-

H

tery before the district justice of Koolauloa, fined, and sentenced to imprisonment for non-payment of the fine, this Court held that the justice having had competent jurisdiction to try and decide the case, it could not inquire into the legality of the sentence, on a writ of *habeas corpus*, and that the prisoners must be left to their remedy by appeal. We apprehend no principle of law is more firmly established, than that, the judgment of a court, having authority to act, and acting within the scope of that authority, cannot be overturned by a judge at chambers on a writ of *habeas corpus*. At least this doctrine holds true when applied to courts of record, and such is the current of all the authorities, English and American. It is granted in the argument of this case, that the police justice had competent jurisdiction to commit for contempts, and the ground taken by the learned counsel for the prisoner is, not that he exceeded that jurisdiction, but that he erred in the application of his power, and that his erroneous judgment should be corrected. It is admitted that a prisoner found guilty of an offense within the police magistrate's jurisdiction, for instance theft or adultery, and committed to prison for the same, could have no relief by a writ of *habeas corpus*, however unjust the sentence, so long as the magistrate kept within his authority; and, in our opinion, there is little if any distinction, in principle, between that case and the present. In both there is a conviction, in both a commitment in consequence of such conviction, and if we cannot overthrow the proceedings in the first, how can we in the second ?

In the famous case of Brass Crossby, Lord Mayor of London, which is directly in point, application was made to the Court of Common Pleas for a *habeas corpus* to bring up the body of the Lord Mayor, who was committed for contempt by the House of Commons. It was argued that the House of Commons had no authority to commit for a contempt; and if they had, that they had not used it rightly and properly. The whole court was of opinion that the House of Commons had the right to commit for contempt; and that the court could not revise its adjudication. Lord Chief Justice De Grey said, " When the House of Commons adjudged anything to be a contempt, or a breach of privilege, their adjudication is a conviction, and their commitment in consequence, is execution; and no court can discharge or bail a person that is in execution by the judgment of any other court. The House of Commons, therefore, having an authority to commit, and that commitment being an execution, what can this court do? It can do nothing when a person is in execution by the judgment of a court having competent jurisdiction." Mr. Justice Blackstone said, " All courts, by which I mean to include the two Houses of Parliament, and the courts of Westminster Hall, can have no control in matters of contempt. The sole adjudication for contempt, and the punishment thereof, belongs exclusively, and without interfering, to each respective court. Infinite confusion and disorder would follow, if courts could, by writs of *habeas corpus*, examine and determine the contempt of others." The rule laid down in this case has been followed in England, with few if any exceptions, from that time to the present.

The most eminent jurists of the United States have invariably assented to this principle, and it has been followed in all their courts. Chief Justice Kent in the case of John V. N. Yates, (4 Johnson's

R. 317,) has reviewed all the English authorities on this point at much length, and in one of his most elaborate and masterly decisions, established the doctrine of non-interference by one court with another, in cases of contempt, on a foundation that has never been shaken.

The same principle has been confirmed by the Supreme Court ot the United States in Kearney's case, (7 Wheaton's Rep. 38,) in which it was held that the court would not grant a *habeas corpus* where a party was committed for a contempt adjudged by a court of competent jurisdiction.

The case was this, a motion was made for a *habeas corpus* to bring up the body of John T. Kearney, in custody of the Marshal, under a commitment of the Circuit Court for the District of Columbia, for an alleged contempt. The petition stated, that on the trial of an indictment in that court, the petitioner was examined as a witness, and refused to answer a certain question which was put to him, because he conceived it tended materially to implicate him as a particeps criminis. The objection was over-ruled by the court, and he having persisted in refusing to answer the question, he was committed to jail for the supposed contempt, and for no other cause.

Judge Story, who delivered the opinion of the court, held the following language: "It is also to be observed, that there is no question here, but that this commitment was made by a court of competent jurisdiction, and in the exercise of an unquestionable authority. The only objection is, not that the court acted beyond its jurisdiction, but that it erred in its judgment of the law applicable to the case. If then, we are to give any relief in this case, it is by a revision of the opinion of the court, given in the course of a criminal trial, and thus asserting a right to control the proceedings, and take from them the conclusive effect which the law intended to give them. · If this were an application for a *habeas corpus* after judgment on an indictment for an offense within the jurisdiction of the Circuit Court, it could hardly be maintained, that this court could revise such a judgment, or the proceedings which led to it, or set it aside and discharge the prisoner. There is, in principle, no distinction between that case and the present; for when a court commits a party for a contempt, their adjudication is a conviction, and their commitment in consequnce is execution; and so the law was settled upon full deliberation, in the case of Brass Crossby, Lord Mayor of London, (3 Wilson, 188.)" Again, after commenting on the case of Crossby, he continues—"So that it is most manifest from the whole reasoning of the court in this case, that a writ of *habeas corpus* was not deemed a proper remedy, where a party was committed for a contempt by a court having competent jurisdiction; and that, if granted, the court could not enquire into the sufficiency of the cause of commitment. If, therefore, we were to grant the writ in this case, it would be applying it in a manner not justified by principle or usage; and we should be bound to remand the party, unless we are prepared to abandon the whole doctrine, so reasonable, just and convenient, which has hitherto regulated this important subject. We are entirely satisfied to administer the law, as we find it, and are all of opinion that upon the facts of this case, the motion ought to be denied.

" The argument of inconvenience has been pressed upon us with great earnestness. But where the law is clear, this argument can be

of no avail; and it will probably be found that there are also serious inconveniences on the other side. Wherever power is lodged it may be abused. But this forms no solid objection against its exercise. Confidence must be reposed somewhere; and if there should be an abuse, it will be a public grievance, for which remedy may be applied by the legislature, and is not to be devised by courts of justice."

The cases cited are to the point, clear and conclusive It is argued that the Superior Court has appellate jurisdiction of all matters and controversies from any inferior court, and that this jurisdiction should be exercised in this case by a judge of that court at chambers. 'Tis true the Superior Court has this appellate jurisdiction; but we think it should not be exercised by one of its judges, at chambers, in a case like the present. The extensive jurisdiction conferred upon the Police Courts of Honolulu and Lahaina give them, to a certain degree, a national character, and we are of opinion that when they commit a witness for a contempt, it would be both unjust and unreasonable for a judge of the Superior Court, in vacation, to interfere with their decision and enquire into the grounds of their commitment, so long as they have complete jurisdiction, and act within the scope of their authority. To extend this principle to all the inferior district justices of the kingdom,—to those, who, unlike the police justices of Honolulu and Lahaina, are not confined to forms, and not compelable to keep any other record of their transactions and proceedings than the mere conclusion, or judgment at which they may arrive, and say that we will not review the grounds of their commitments in cases of contempt, may be going too far, and it is sufficient for the purposes of this case to stop with the police justices named. In the case of the other inferior justices, we are inclined to the opinion, however, that it would be the duty of a judge of the Superior Court at chambers to make an exception to the general rule, to exercise a healthy discretion in commitments made by them for contempt, and, if necessary, revise and annul their proceedings. But this is beyond the present case, and we stop.

The determination of the first question raised renders it unnecessary to enter upon the second; and the court is of opinion that it should not interfere in this case.

It is ordered, that the said Michael Morton Webster be remanded to the custody of the Marshal of the Hawaiian Islands, to remain in the same state in which he was at the time of the issuing of the said writ of *habeas corpus*.

Motion denied.

Mr. Montgomery for the motion.

Mr. Bates contra.